**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>PANASONIC CORPORATION and PANASONIC CORPORATION OF NORTH AMERICA,<br><br>Defendants. | Civil Action No. 2:26-cv-00772<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this Complaint against Panasonic Corporation and Panasonic Corporation of North America (collectively "Panasonic" or "Defendants"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendants' infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available, respectively, at the links below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A. | 7,075,907 | Method for Signalling DTX Periods and Allocation of New Channels in a Statistical Multiplexed Radio Interface | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7075907 |
| B. | 7,346,340 | Provision of User Policy to Terminal | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7346340 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| C. | 7,394,798 | Push-To Talk Over Ad-Hoc Networks | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7394798 |
| D. | 7,643,423 | Dynamic Channel Allocation In Multiple-Access Communication Systems | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7643423 |
| E. | 7,974,260 | Method of Transmitting Time-Critical Scheduling Information Between Single Network Devices In A Wireless Network Using Slotted Point-To-Point Links | USPTO.gov, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7974260 |
| F. | 8,401,571 | Mobile Electronic System | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8401571 |

2. IoT Innovations seeks injunctive relief and monetary damages.

## PARTIES

3. IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4. On information and belief, Defendant Panasonic Corporation is a corporation organized under the laws of the Japan, with a principal place of business located at 1006, Oaza Kadoma, Kadoma-shi, Osaka 571-8501, Japan.

5. On information and belief, Defendant Panasonic Corporation of North America is a corporation organized under the laws of the State of New Jersey, with a principal place of business located at Two Riverfront Plaza, 6th Floor, Newark, New Jersey 07102-5490. Defendant Panasonic Corporation of North America has a regular and established address at 3461 Plano Pkwy, The Colony, Texas 75056.

6. Defendant Panasonic Corporation of North America can be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Company, 211

E. 7th Street, Suite 620, Austin, Texas 78701, at Defendant's regular and established business, or anywhere Defendant can be found.

7. Defendants are part of the corporate structure and distribution chain for making, importing, offering to sell, selling, and distributing the Accused Products in the United States, either directly or through their subsidiaries.

8. Upon information and belief, Defendants, directly or through their subsidiaries, operate a location at 3461 Plano Pkwy, The Colony, TX 75056 in Denton County.

## JURISDICTION AND VENUE

9. IoT Innovations repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

10. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

### DEFENDANT PANASONIC CORPORATION

11. Venue is proper in this District as to Defendant Panasonic Corporation pursuant to 28 U.S.C. § 1400(b) and 1391(c). Panasonic Corporation is organized under the laws of Japan. 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants." Because § 1391(c)(3) renders Panasonic Corporation a resident of every judicial district in the United States for purposes of § 1400(b), venue is proper in this District. *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018).

12. Defendant Panasonic Corporation is subject to this Court's specific and general

personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant Panasonic Corporation's substantial business in this judicial district, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

13. Specifically, Defendant Panasonic Corporation intends to do and does business in, has committed acts of infringement in this District, in this State of Texas, and in the United States, directly or through intermediaries, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

14. Defendant Panasonic Corporation has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendant Panasonic Corporation regularly sells (either directly or indirectly), its products within this District. For example, Defendant Panasonic Corporation has placed and continues to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas. Defendant Panasonic Corporation is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant Panasonic Corporation derives substantial revenue from goods sold to Texas residents and consumers.

15. Upon information and belief, Defendant Panasonic Corporation ships and causes to be shipped into the District infringing products and materials instructing its customers to perform

infringing activities, to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

16. Defendant Panasonic Corporation markets, sells, and delivers Accused Products in this District, and has committed acts of infringement in this District.

17. Defendant Panasonic Corporation commits acts of infringement from this District, including, but not limited to, use of the Accused Products in an infringing manner.

18. Defendant Panasonic Corporation has committed acts of direct patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant Panasonic Corporation would not offend traditional notions of fair play and substantial justice.

19. Defendant Panasonic Corporation commits acts of infringement from this District, including, but not limited to, importing, selling, offering for sale, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

20. In addition, or in the alternative, this Court has personal jurisdiction over Defendant Panasonic Corporation pursuant to Fed. R. Civ. P. 4(k)(2).

**DEFENDANT PANASONIC CORPORATION OF NORTH AMERICA**

21. Venue is proper against Defendant Panasonic Corporation of North America in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

22. Defendant Panasonic Corporation of North America offers products and services, including through the use and/or testing of the Accused Products, and conducts business in this

District.

23. Defendant Panasonic Corporation of North America is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant Panasonic Corporation of North America's substantial business in this judicial District, including: (i) At least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

24. Specifically, Defendant Panasonic Corporation of North America intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

25. Upon information and belief, Defendant Panasonic Corporation of North America owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities at several locations in this District, including, but not limited to facilities at the following addresses: 3461 Plano Pkwy, The Colony, TX 75056 in Denton County.




Source: GOOGLE.COM

26. Defendant Panasonic Corporation of North America uses these offices and warehouses to sell and distribute its products including the Accused Products as described below.

27. Defendant Panasonic Corporation of North America commits acts of infringement from this District, including, but not limited to, importing, selling, offering, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

**THE ACCUSED PRODUCTS**

28. IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

29. Based upon public information, Defendants own, operate, and/or control the website and domain https://na.panasonic.com/, through which they advertise, sell, offer to sell, provide and/or educate customers about their products and services.

30. Defendants make, use, cause to be used, sell, offer for sale, provide, supply, and/or

distribute their devices, including their **rugged laptop and tablet solutions (including the TOUGHBOOK 40, TOUGHBOOK 56, TOUGHBOOK 33 (CF-33), and TOUGHBOOK G2); their commercial laptop solutions (including the Let's Note FV4); their home monitoring solutions (including the HomeHawk Home Monitoring system, the HomeHawk App, HomeHawk Access Point (KX-HNB700/KX-HNB705), HomeHawk Front Door Camera (KX-HNC700/KX-HNC705), and HomeHawk Outdoor Camera (KX-HNC710/KX-HNC715)); their Bluetooth audio solutions (including the BMAX Bluetooth Party Speaker SC-BMAX10 and BMAX Bluetooth Party Speaker SC-BMAX5); their digital camera solutions (including the LUMIX S5II, LUMIX S9, LUMIX S5IIX, LUMIX S5, LUMIX GH7, LUMIX G9II, LUMIX ZS99, LUMIX ZS300, LUMIX S1II, and LUMIX S1IIE); their television solutions (including the Panasonic OLED TV – Z8BA Series and Panasonic LED TV – W70 Series); their wireless connectivity module solutions (including the PAN9026, PAN9028 Series, PAN9019/PAN9019A, PAN1783/PAN1783A Series, PAN1782 Series, PAN1770 Series, PAN1781 Series, PAN1780 Series, PAN1780-AT Series, PAN1740A Series, and PAN1326C2 Series)**; and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products"). *See* https://connect.na.panasonic.com/toughbook/rugged-laptops-tablets/toughbook-40 (TOUGHBOOK 40); https://connect.na.panasonic.com/toughbook/rugged-laptops-tablets/toughbook-56 (TOUGHBOOK 56); https://connect.na.panasonic.com/toughbook/rugged-laptops-tablets/toughbook-33 (TOUGHBOOK 33); https://connect.na.panasonic.com/toughbook/rugged-laptops-tablets/toughbook-g2

(TOUGHBOOK G2); https://connect.na.panasonic.com/lets-note/commercial-laptops/lets-note-fv4 (Let's Note FV4); https://play.google.com/store/apps/details?id=com.panasonic.jp.apcpbdhdcam&hl=en_US; https://help.na.panasonic.com/answers/homehawk-system-setup-overview/ (HomeHawk Home Monitoring system, Front Door & Outdoor Camera,); https://na.industrial.panasonic.com/whats-new/pan9019pan9019a-wi-fi-module (PAN9019 and PAN9019A Host Controlled Wi-Fi Modules); https://na.industrial.panasonic.com/products/wireless-connectivity/wi-fi/lineup/host-controlled-wi-fi-modules/series/90944 (PAN9026 Wi-Fi Module); https://na.industrial.panasonic.com/products/wireless-connectivity/wi-fi/lineup/host-controlled-wi-fi-modules/series/150123 (PAN9028 Series Wi-Fi Module); https://na.industrial.panasonic.com/products/wireless-connectivity/wi-fi/lineup/host-controlled-wi-fi-modules/series/144637 (PAN1783/PAN1783A Series Bluetooth Module); https://na.industrial.panasonic.com/products/wireless-connectivity/bluetooth/lineup/bluetooth-low-energy/series/150124 (PAN1782 Series Bluetooth Module); https://na.industrial.panasonic.com/products/wireless-connectivity/bluetooth/lineup/bluetooth-low-energy/series/149424 (PAN1770 Series Bluetooth Module); https://na.industrial.panasonic.com/products/wireless-connectivity/bluetooth/lineup/bluetooth-low-energy/series/148529 (PAN1781 Series Bluetooth Module); https://na.industrial.panasonic.com/products/wireless-connectivity/bluetooth/lineup/bluetooth-low-energy/series/144176 (PAN1780 Series Bluetooth Module); https://na.industrial.panasonic.com/products/wireless-connectivity/bluetooth/lineup/bluetooth-low-energy/series/128560 (PAN1780-AT Series Bluetooth Module); https://na.industrial.panasonic.com/products/wireless-connectivity/bluetooth/lineup/bluetooth-

low-energy/series/142621 (PAN1740A Series Bluetooth Module); https://na.industrial.panasonic.com/products/wireless-connectivity/bluetooth/lineup/bluetooth-dual-mode/series/123018 (PAN1326C2 Series Bluetooth Dual-Mode Module); https://shop.panasonic.com/products/s5m2-full-frame-mirrorless-camera-20-60mm-f3-5-5-6-lens (LUMIX S5II Full Frame Mirrorless Camera); https://shop.panasonic.com/products/lumix-s9-full-frame-mirrorless-camera (LUMIX S9 Full Frame Mirrorless Camera); https://shop.panasonic.com/products/s5m2x-full-frame-mirrorless-camera-body (LUMIX S5IIX Full Frame Mirrorless Camera); https://shop.panasonic.com/products/s5-full-frame-mirrorless-camera-body (LUMIX S5 Full Frame Mirrorless Camera); https://shop.panasonic.com/products/gh7-mirrorless-camera (LUMIX GH7 Mirrorless Camera); https://shop.panasonic.com/products/g9m2-mirrorless-camera-body (LUMIX G9II Mirrorless Camera); https://shop.panasonic.com/products/lumix-zs99-point-and-shoot-pocket-sized-travel-and-lifestyle-camera-30x-zoom (LUMIX ZS99 Point-and-Shoot Camera); https://shop.panasonic.com/products/lumix-zs300-compact-point-shoot-4k-digital-camera-15x-zoom-travel-camera (LUMIX ZS300 Compact Digital Camera); https://shop.panasonic.com/products/lumix-s1ii-full-frame-camera-partially-stacked-sensor-dc-s1m2 (LUMIX S1II Full Frame Camera); https://shop.panasonic.com/products/lumix-s1iie-full-frame-camera-dc-s1m2e (LUMIX S1IIE Full Frame Camera); https://shop.panasonic.com/products/panasonic-oled-tv-z8ba-series (Panasonic OLED TV Z8BA Series); https://shop.panasonic.com/products/panasonic-led-tv-w70-series (Panasonic LED TV W70 Series); https://shop.panasonic.com/products/panasonic-bmax-bluetooth-party-speaker-sc-bmax10 (Panasonic BMAX Bluetooth Party Speaker SC-BMAX10); and https://shop.panasonic.com/products/panasonic-bmax-bluetooth-party-speaker-sc-bmax5

(Panasonic BMAX Bluetooth Party Speaker SC-BMAX5).

31. Defendants also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products.

32. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,075,907**

33. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count I, the "Accused Products" include Defendants' wireless-enabled devices, including, but not limited to, **the TOUGHBOOK 40, TOUGHBOOK 56, TOUGHBOOK 33 (CF-33), TOUGHBOOK G2**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

34. The USPTO duly issued U.S. Patent No. 7,075,907 (hereinafter, the "'907 patent") on July 11, 2006, after full and fair examination of Application No. 09/587,993, which was filed on June 6, 2000. *See* '907 patent at p. 1.

35. IoT Innovations owns all substantial rights, interest, and title in and to the '907 patent, including the sole and exclusive right to prosecute this action and enforce the '907 patent against infringers and to collect damages for all relevant times.

36. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '907 patent.

37. The claims of the '907 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions improve wireless communication resource management by enabling signaling of temporary transmission

cessation, determining whether to retain or release an assigned traffic channel during inactivity, and signaling the mobile station to release the channel when needed—allowing dynamic radio resource reallocation while preserving the mobile station's ability to resume communication.

38. The written description of the '907 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39. Defendants have directly infringed one or more claims of the '907 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '907 patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method for operating a wireless telecommunications system, comprising steps of: signalling, between a mobile station to a network, that one of the mobile station or the network is temporarily ceasing transmission of frames; at the network and in response to the signalling that one of the mobile station or the network is temporarily ceasing transmission of frames, determining if a current traffic channel that is assigned to the mobile station can be retained by the mobile station, or whether the current traffic channel must be released by the mobile station; and if it is determined that the current traffic channel must be released by the mobile station, signalling from the network to the mobile station to release the channel.

40. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with

interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,346,340**

41. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count II, the "Accused Products" include Defendants' wireless-enabled devices, including, but not limited to, the **TOUGHBOOK 40, TOUGHBOOK 56, TOUGHBOOK 33 (CF-33), TOUGHBOOK G2**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

42. The USPTO duly issued U.S. Patent No. 7,346,340 (hereinafter, the "'340 patent") on March 18, 2008, after full and fair examination of Application No. 11/170,100, which was filed on Jun. 30, 2005. *See* '340 patent at p. 1.

43. IoT Innovations owns all substantial rights, interest, and title in and to the '340 patent, including the sole and exclusive right to prosecute this action and enforce the '340 patent against infringers and to collect damages for all relevant times.

44. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '340 patent.

45. The claims of the '340 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve authentication and policy control for mobile devices roaming in visited networks.

46. The written description of the '340 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

47. Defendants have directly infringed one or more claims of the ’340 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly infringed, either literally or under the doctrine of equivalents, claim 24 of the ’340 patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, provide a user terminal for connection in a mobile communication system, the user terminal being configured to: authenticate into a visited network, wherein the visited network is distinct from a home network of the user terminal; receive an authentication success message from the visited network, wherein the authentication success message includes a user policy which is to be used by the user terminal in the visited network, and further wherein the user policy is based at least in part on a local policy of the visited network; and apply the user policy to uplink packets which are transmitted from the user terminal.

48. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,394,798

49. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count III, the “Accused Products” include Defendants’ wireless-enabled devices, including, but not limited to, **the HomeHawk Home Monitoring system (including the HomeHawk App, HomeHawk Access Point (KX-HNB700/KX-HNB705), HomeHawk Front Door Camera (KX-HNC700/KX-HNC705), and**

**HomeHawk Outdoor Camera (KX-HNC710/KX-HNC715))**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

50. The USPTO duly issued U.S. Patent No. 7,394,798 (the "'798 patent") on July 1, 2008, after full and fair examination of Application No. 10/962,694, which was filed on October 13, 2004. *See* '798 patent at 1.

51. IoT Innovations owns all substantial rights, interest, and title in and to the '798 patent, including the sole and exclusive right to prosecute this action and enforce the '798 patent against infringers and to collect damages for all relevant times.

52. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '798 patent.

53. The claims of the '798 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve communication between network nodes in a network by grouping and using direct connections to save network resources.

54. The written description of the '798 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

55. Defendants have directly infringed one or more claims of the '798 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 16 of the '798

patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method for controlling network system comprising temporarily forming a first group including a first plurality of network nodes, temporarily forming a second group including a second plurality of network nodes, sending and receiving information between the first group and the second group, wherein a first network node included in the first plurality of network nodes and the second plurality of network nodes sends and receives the information between the first group and the second group; wherein the information is sent and received using a direct contact via a radio connection between at least two network nodes of the first group and the second group.

56. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,643,423**

57. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count IV, the "Accused Products" include Defendants' wireless-enabled devices, including, but not limited to, **the TOUGHBOOK 33 (CF-33)**, **TOUGHBOOK G2**, **Let's Note FV4**, **Panasonic Industry wireless connectivity modules PAN9019/PAN9019A Series (Host Controlled Wi-Fi Modules) which support IEEE 802.11ax and provide 802.11ax functionality including uplink/downlink OFDMA and uplink/downlink MU-MIMO**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

58. The USPTO duly issued U.S. Patent No. 7,643,423 (hereinafter, the "'423 patent") on

January 5, 2010, after full and fair examination of Application No. 11/507,789, which was filed on August 21, 2006.

59. IoT Innovations owns all substantial rights, interest, and title in and to the ’423 patent, including the sole and exclusive right to prosecute this action and enforce the ’423 patent against infringers and to collect damages for all relevant times.

60. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’423 patent.

61. The claims of the ’423 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of two-way communication systems by reducing interference.

62. The written description of the ’423 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63. Defendants have directly infringed one or more claims of the ’423 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’423 patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method comprising: transmitting, via a downlink channel, a frame to two or more communication units, a first portion of the frame including reservation set information

and a second portion of the frame including allocation set information, wherein the allocation set information indicates a dynamically determined set of uplink channels that constitute an allocation set, and wherein the reservation set information indicates particular channels of the allocation set that are reserved for each of the two or more communication units; receiving uplink communications from at least one of the two or more communications units via the communications channels reserved thereto as indicated by the reservation set.

64. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,974,260**

65. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count V, the "Accused Products" include Defendants' wireless-enabled devices, including, but not limited to, **the Panasonic BMAX Bluetooth Party Speaker SC-BMAX10, Panasonic BMAX Bluetooth Party Speaker SC-BMAX5, Panasonic Industry products such as PAN9026, PAN9028 Series, PAN9019/PAN9019A, PAN1783/PAN1783A Series, PAN1782 Series, PAN1770 Series, PAN1781 Series, PAN1780 Series, PAN1780-AT Series, PAN1740A Series, and PAN1326C2 Series LUMIX S5II Full Frame Mirrorless Camera, LUMIX S5II, LUMIX S9, LUMIX S5IIX, LUMIX S5, LUMIX GH7, LUMIX G9II, LUMIX ZS99, LUMIX ZS300, LUMIX S1II, LUMIX S1IIE, Panasonic OLED TV – Z8BA Series, Panasonic LED TV – W70 Series, and Panasonic Connect products, such as TOUGHBOOK 56, TOUGHBOOK 40, TOUGHBOOK 33, and TOUGHBOOK G2, that support Bluetooth 5.0 communication**, and

any other devices and hardware, software, and functionality that comprise substantially similar functionality.

66. The USPTO duly issued U.S. Patent No. 7,974,260 (the "'260 patent") on July 5, 2011, after full and fair examination of Application No. 10/489,269, which was filed on September 10, 2001. *See* '260 patent at 1. A Certificate of Correction was issued on November 29, 2011. *See id.* at 17.

67. IoT Innovations owns all substantial rights, interest, and title in and to the '260 patent, including the sole and exclusive right to prosecute this action and enforce the '260 patent against infringers and to collect damages for all relevant times.

68. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '260 patent.

69. The claims of the '260 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of timing controls among devices in a wireless network setting.

70. The written description of the '260 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

71. Defendants have directly infringed one or more claims of the '260 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have

directly infringed, either literally or under the doctrine of equivalents, claim 5 of the ’260 patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method of transmitting timing control information from a first device to a second device in a communication network, the method comprising: defining a data sequence at a first device, the data sequence including a header portion and a payload portion, wherein the header portion includes an address code of a second device and the payload portion includes timing control information for communicating packets between devices in a communication network wherein the timing control information defines when the second device communicates, wherein the address code is a first active member address of the second device, and wherein the first active member address and a second active member address are assigned to the second device; and transmitting the defined data sequence in a data communication packet from the first device to the second device in a time defined contact slot.

72. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,401,571**

73. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count VI, the “Accused Products” include Defendants’ wireless-enabled devices, including, but not limited to, **the TOUGHBOOK 40, TOUGHBOOK 56, TOUGHBOOK 33 (CF-33), TOUGHBOOK G2**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

74. The USPTO duly issued U.S. Patent No. 8,401,571 (hereinafter, the “’571 patent”) on

March 19, 2013, after full and fair examination of Application No. 10/534,012, which was filed on May 5, 2005, and which claims priority to a PCT application filed on November 5, 2002. *See* ’571 patent at p. 1. A Certificate of Correction was issued on March 11, 2014. *See id.* at 11.

75. IoT Innovations owns all substantial rights, interest, and title in and to the ’571 patent, including the sole and exclusive right to prosecute this action and enforce the ’571 patent against infringers and to collect damages for all relevant times.

76. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’571 patent.

77. The claims of the ’571 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the operation of devices by using a posture of an apparatus to select a mode of presentation.

78. The written description of the ’571 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

79. Defendants have directly infringed and continue to directly infringe one or more claims of the ’571 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the ’571 patent. Defendants, using the Accused Products and their associated hardware and software and functionalities, provide an

apparatus comprising at least one processing component configured to process data indicative of the current posture of said apparatus for enabling a posture related presentation of information to a user via an output component, said processing including selecting one of at least two different modes of presentation depending on said current posture of said apparatus.

80. IoT Innovations has been damaged as a result of the infringing conduct by Defendants as alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

81. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '571 patent. Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

82. Defendants had knowledge of the '571 patent at least as of the date when they were notified of the filing of this action.

83. Upon information and belief, Defendants have also indirectly infringed one or more claims of the '571 patent by inducing others to directly infringe said claims.

84. Defendants have induced end-users, including, but not limited to, Defendants' employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '571 patent by providing or requiring use of the Accused Products.

85. Defendants took active steps, directly or through contractual relationships with others,

with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’571 patent, including, for example, claim 1 of the ’571 patent.

86. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on its website, app, or written documentation on how to use the Accused Products in an infringing manner.

87. Upon information and belief, Defendants have also indirectly infringed by contributing to the infringement of the ’571 patent.

88. Defendants are performing these steps, which constitute induced infringement with the knowledge of the ’571 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe the ’571 patent. Defendants’ inducement is ongoing.

89. Defendants have contributed to the direct infringement of the ’571 patent by their personnel, contractors, and customers.

90. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’571 patent, including, for example, claim 1 of the ’571 patent. The special features constitute a material part of the invention of one or more of the claims of the ’571 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, the primary purpose of the Accused Products is to act and operate in a way that infringes the ’571 patent.

91. Defendants’ contributory infringement is ongoing.

92. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

93. Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

94. Defendants' direct infringement of one or more claims of the '571 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

## JURY DEMAND

95. IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

96. IoT Innovations requests that the Court find in its favor and against Defendants, and that the Court grant IoT Innovations the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

b. A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '571 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c. Judgment that Defendants account for and pay to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendants' infringing activities and

other conduct complained of herein;

d. Judgment that Defendants' infringements be found willful as to the '571 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: August 28, 2026

Respectfully submitted,

*/s/ James F. McDonough, III*

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

***Attorneys for Plaintiff IoT INNOVATIONS LLC***

* admitted to the Eastern District of Texas